INTRODUCTION
Justice DURHAM,
opinion of the Court:
T1 The State appeals from the district court's order posthumously declaring Jed Gressman factually innocent of the crimes he was convicted of in 1998 and awarding his widow financial assistance payments under the Post-Conviction Remedies Act (PCRA). The State argues the district court erred by (1) finding that Mr. Gressman's claims under the PCRA survived his death; (2) determining Mr. Gressman to be factually innocent as a matter of law based on the prior vacatur of his conviction; and (8) awarding prejudgment interest on the financial assistance payments.
12 We find that Mr. Gressman's PCRA claims did not abate upon his death and that the district court properly substituted his widow as the plaintiff in this suit. The district court erred, however, when it found that the vacatur of Mr. Gressman's conviction conclusively established his factual innocence, as defined by the PCRA. Finally, we hold that the version of the PCRA relevant to this case does not permit the district court to award prejudgment interest, We therefore reverse for further proceedings consistent with this opinion.
BACKGROUND
T3 Mr. Gressman was accused of rape and aggravated sexual assault after he and his co-defendant, Troy Hancock, offered a woman a ride in Mr. Hancock's truck. The woman claimed that during this ride, Mr. Gress-man and Mr. Hancock began to fondle her, over her protests, and that they ultimately forced her out of the truck at a secluded location, where Mr. Gressman raped her, aided by Mr. Hancock. At trial, the State presented the testimony of the alleged victim and a DNA expert, who testified that DNA testing of semen recovered from the alleged victim could not exclude Mr. Gressman as the source of the semen.
[4 Mr. Gressman was convicted of aggravated sexual assault and sentenced to a term of five years to life. In 1996, after Mr. Gressman had served thirty-nine months of that sentence, he and the Juab County Attorney jointly moved the district court to dismiss all charges against him based on newly-discovered evidence. Most importantly, more advanced DNA testing established that semen recovered from the victim did not come from Mr. Gressman. Reasoning that this newly-discovered evidence would have materially influenced the jury's deliberations, the district court vacated Mr. Gressman's conviction and granted him a new trial. The State chose not to file new charges against Mr. Gressman, and no trial occurred.
*1001 5 In 2009, Mr. Gressman filed suit under the PCRA, seeking to establish his factual innocence and obtain financial assistance payments under that statute. Mr. Gressman died during the pendency of the suit, so counsel moved to substitute his widow. The State moved to dismiss, claiming that Mr. Gressman's claims abated upon his death. Ultimately, both sides moved for summary judgment on Mr. Gressman's factual innocence petition. The district court, in a single order, granted the motion to substitute Mr. Gressman's widow, denied the State's motion to dismiss, denied the State's motion for summary judgment, and granted Mr. Gress-man's widow's motion for summary judgment. This latter decision was premised on the notion that Mr. Gressman's factual innocence had already been determined when his conviction was vacated. After so ruling, the district court awarded Mr. Gressman's widow PCRA assistance payments-including prejudgment interest. The State appeals.
STANDARD OF REVIEW
{6 The appellate briefing raises two issues of statutory interpretation: (1) whether Mr. Gressman's claims survive his death and (2) whether the district court properly awarded prejudgment interest on the assistance payments it awarded. Because the answer to both of these questions turns upon our interpretation of the PCRA and Utah's survival statute, we afford no deference to the district court. See Vorher v. Henriod, 2013 UT 10, ¶ 6, 297 P.3d 614 (The interpretation of a statute is a legal question reviewed de novo.). We likewise review de novo the district court's summary adjudication of Mr. Gressman's factual innocence. See Gudmundson v. Del Ozone, 2010 UT 33, ¶ 10, 232 P.3d 1059 ("We review the district court's decision to grant summary judgment for correctness...." (internal | quotation marks omitted)).
ANALYSIS
I. MR. GRESSMANS PCRA CLAIMS SURVIVED HIS DEATH
A. Mr. Gressman's Claims Would Abate Under the Common Law
T7 At common law, personal tort actions abate upon the death of either the claimant or the tortfeasor, while tort claims for property damage or conversion survive. Morrison v. Perry, 104 Utah 151, 140 P.2d 772, 781-82 (1943); see Mason v. Union Pac. Ry. Co., 7 Utah 77, 24 P. 796, 796 (Utah Terr.1890) ("In the case of injuries to the person, whether by assault, battery, false imprisonment, slander, or otherwise, if either party who received or committed the injury die, no action can be supported either by or against the executors, or other personal representatives." (internal quotation - marks omitted)). The rationale for this distinction is
that the reason for redressing purely personal wrongs ceases to exist either when the person injured cannot be benefited by a recovery or the person inflicting the injury cannot be punished, whereas, since the property or estate of the injured person passes to his personal representatives, a cause of action for injury done to these can achieve its purpose as well after the death of the owner as before.
Barnes Coal Corp. v. Retail Coal Merchs. Ass'n, 128 F.2d 645, 649 (4th Cir.1942).
T8 Mr. Gressman's statutory claim for compensation upon a showing of factual inno-cenee is not a claim for injury to property that would survive a claimant's death at common law. None of the injuries associated with imprisonment of a factually innocent person are in any way associated with the kinds of property claims that survived a claimant's death at common law. Such claims typically involved damage to or destruction of tangible personal property. See, e.g., Morrison, 140 P.2d at 782 (holding that an action for recovery of damages to an automobile caused by a collision survived death).
T9 A factual innocence claim, rather, is essentially a claim for injury to the person, which abated at common law. The closest analogues at common law appear to be claims for false imprisonment and for malicious prosecution, both of which were subject to abatement. See Mason, 24 P. at 796 (false imprisonment does not survive death); State *1002 ex rel. Crow v. Weygandt, 170 Ohio St. 81, 162 N.E.2d 845, 848 (1959) ("A cause of action for malicious prosecution did not survive the death of its owner at common law.") These claims are comparable to a factual innocence claim in the nature of the harm (false imprisonment) and the wrong (malicious prosecution) they vindicate. And they were both personal claims that abated at death under the common law.
T 10 Because Mr. Gressman's claims would abate upon his death under the common law, his suit may only survive under the aegis of a statutory provision. We therefore examine whether the PCRA or Utah's general survival statute operate to preserve Mr. Gress-man's claims.
B. The Relevant Version of the PCRA does not Provide for the Survival of Mr. Gressman's Claims
{11 When a cause of action is created by statute, we look first to that statute for an indication of survival or abatement. The survivability of the factual innocence claim under the PCRA implicates two subsidiary questions. First is which version of the PCRA applies-the 2012 amendment, which speaks explicitly to survivability,[1] or the prior version of the statute, which does not. See-ond is the proper construction of the statute-whether it can be read to provide for survivability or whether it preserves the common-law rule of abatement.
1. The Preamendment Version of the PCRA Applies
112 The Utah Code articulates a general presumption - against - retroactivity. Urax Con® § 68-8-8. By statute, " 'a provision of the Utah Code is not retroactive, unless the provision is expressly declared to be retroactive.'" State v. Clark, 2011 UT 23, ¶ 11, 251 P.3d 829 (quoting Urax Cope § 68-3-3). In this case, there is no expression of retroactivity in the 2012 amendments, and no other basis for applying the amended provisions exists. Accordingly, we find the preamendment version of the statute controls.
113 Under our case law, "the parties' substantive rights and liabilities are determined by the law in place at the time when a cause of action arises," while their procedural rights and responsibilities are governed by "the law in effect at the time of the procedural act" at issue. Id. T% 12, 14 (internal quotation marks omitted). Thus, if survivability is a matter of substance, then that question is governed by the law in place when Mr. Gressman's claim arose. -If it is a procedural matter, on the other hand, then subsequent enactments (like the 2012 amendments) could be deemed to apply.
T14 We view the 2012 amendments in question as clearly substantive. The amended provisions foreclose postjudgment interest for financial assistance payments and cut off such payments altogether after the death of the defendant-petitioner. See CopE §§ 78B-9-402(14), -405(8) (2012). They accordingly "enlarge, eliminate, or destroy vested or contractual rights" and do not merely dictate "the practice and procedure or the legal machinery by which the substantive law is determined or made effective." Brown & Root Indus. Serv. v. Indus. Comm'n of Utah, 947 P.2d 671, 675 (Utah 1997) (internal quotation marks omitted). We therefore hold that Mr. Gressman's petition is governed by the law in effect in 2008, not by the 2012 amendments enacted during the pendency of this action.
115 In arguing the contrary, the State seeks to invoke a narrow exception to the *1003 retroactivity ban for amendments that merely clarify existing law, insisting that the bill introducing the amendments announced that it "malde] clarifying amendments to factual innocence provisions." 2012 Utah Laws 896. We decline to invoke this exception.
{16 Though our case law has occasionally referred to "amendments clarifying statutes" as an "exception" to the retroactivity ban, see, e.g., Keegan v. State, 896 P.2d 618, 620 (Utah 1995), we have never applied them as such. Instead, our retroactivity case law has invoked this "exception" only in connection with statutory amendments that we have characterized as procedural.[2] And when our cases discuss the "clarifying amendment exception," it is always in tandem with or as a counterpart to our analysis of the above-noted distinction between substance and procedure. See Foil v. Ballinger, 601 P.2d 144, 151 (Utah 1979) ("The principle [that amendments to procedural statutes apply to accrued, pending and future actions] applies with particular foree to a remedial statute passed to clarify an earlier procedural enact That limitation is entirely appro-The governing statute, after all, ment.") [3] priate. makes no express room for an exception for clarifying amendments per se. The sole exception spelled out explicitly by statute requires an express provision for retroactivity. See Uran Cop® § 68-8-8.
117 In any event, the 2012 amendments cannot be construed as a mere clarification. "An amendment serves as a clarification when it corrects a discrepancy or merely amplif{ies] ... how the law should have been understood prior to [the amendment]." Salt Lake Cnty. v. Holliday Water Co., 2010 UT 45, ¶ 43, 234 P.3d 1105 (alterations in original) (internal quotation marks omitted). In past cases, we have decided whether an amendment is a mere clarification by asking whether it alters or explains language already present in the original statute or whether the amendment added new language or subsections that "did not exist in any form before the amendments were made." Id. ¶ 44. An amendment that does the former is more likely clarifying in nature; one that does the latter is not. See id.
1 18 The 2012 amendments concerning survivability fall in the latter category. The amendments set up a bifurcated survival scheme, wherein a basic claim for expungement survives a claimant's death, but claims for monetary assistance payments abate. See Utax Cope § 78B-9-402(14) (2012). Nothing in the prior version of the PCRA *1004 could possibly be construed as contemplating this bifurcated system. The 2012 amendment establishes an entirely new framework, not a clarification of an old one.
19 The preamble to the amendment, relied on heavily by the State, is not to the contrary. Though the preamble describes the bill as "mak{ing] clarifying amendments to factual innocence provisions," it goes on to specify the changes made, in a manner differentiating clarifying changes from substantive ones. 2012 Utah Laws 896. For instance, it states that the bill "clarifies the requirement of a hearing if the state does not stipulate to factual innocence" and "clarifies that all proceedings are governed by Utah Rules of Civil Procedure, Rule 65C." Id. In describing the amendments related to survivability, however, the preamble in no way paints them as merely clarifying. Instead, it states that the bill "disallows prejudgment interest on payments made to a person after a finding of factual innocence" and "provides that assistance payments on a claim of factual innocence are extinguished upon the death of the petitioner." Id. Thus, the preamble recognizes that some of the amendments are clarifications and some are not-and places the survivability provision in the latter category.
120 For these reasons, we determine that the 2012 amendments discussing the survivability of factual innocence claims are not retroactive. [4] Rather, survivability for purposes of this case is governed by the versions of the PCRA and Utah's survival statute in effect when Mr. Gressman's claim arose. A cause of action arises "when it becomes remediable in the courts," which normally occurs when "all elements of a cause of action come into being." Davidson Lumber Sales, Inc. v. Bonneville Inv., Inc., 794 P.2d 11, 19 (Utah 1990). This case is unusual, however, in that Mr. Gressman did not have a remediable factual innocence claim until the legislature first created the cause of action in 2008. See 2008 Utah Laws 2298-2300. Therefore, Mr. Gressman's claim did not arise until that time, and we look to the 2008 versions of the PCRA and the survival statute to decide whether Mr. Gress-man's factual innocence claim survives his death.
2. The Preamendment PCRA Does Not Provide for the Survival of Mr. Gress-man's Claims
21 The applicable version of the PCRA does not speak to survivability. As the State notes, the statute does contemplate a claimant "who has been convicted of a felony offense" petitioning the court "for a hearing to establish that the person is factually innocent of the crime or erimes of which the person was convicted." See Ura: Copr § 7T8BB-9-402(2)(a) (2008). And the statutory remedies-financial assistance payments, ex-pungement, an innocence letter, and access to certain services and programs-are aimed at the wrongfully convicted person. See id. § 78B-9-405(1)(a), (6), (7) (2008). But those provisions answer only the threshold question of who the primary claimant is; they say nothing of significance on the secondary question of whether such claimant's interests survive death and may be asserted by a representative. On its face, then, the PCRA seems not to speak to the question of survivability.
22 The legislative history relied on by the district court is not to the contrary. At most, that history indicates only that members of the legislature generally analogized the PCRA's compensation scheme to "a workers compensation system" and suggested that it was patterned after the 9/11 Vie-tims Compensation Fund of 2001. But that tells us nothing of consequence to the survivability of the statutory factual innocence claim under the PCRA. The PCRA's compensation provisions may be analogous to workers compensation and the 9/11 Victims Compensation Fund in some respects, but they are distinguishable in another, more salient *1005 sense: workers compensation statutes and the 9/11 fund expressly provide for survivability, while the PCRA does not![5] Absent some specific provision for survivability in the PCRA, we cannot rely on general references to other claims that do survive death to import the same principle into the PCRA. We accordingly find no basis in the PCRA- or in its legislative history-to support a holding for survivability.
C. - Utah's Survival Statute Preserves Mr. Gressmam's Claims
123 Because the PCRA does not address the survival of Mr. Gressman's claims, we examine Utah's general survival statute to determine whether it supplants the common law rule of abatement in this case. We find that it does.
4 24 The common law rule of abatement of personal tort claims has been modified to one extent or another by survival statutes, which have been adopted by most states. ProssEr AND KEEton on THs® Law or Torts § 126 (W. Page Keeton et al. eds., 5th ed.1984). Utah's survival statute provides that "[al cause of action arising out of personal injury to a person ... does not abate upon the death of the wrongdoer or the injured person." Urax Cope § 78B-3-107(1)(a) In determining whether a statutory claim under the PCRA constitutes a cause of action for "personal injury to a person," we look to analogous common law claims. See ProssEr Anp KEE TON on THE Law or Torts, supra, § 126 (Federal statutory claims under statutes without survival provisions "either survive or not according to whether a similar action would survive under state law."); Wallace v. Kato, 549 U.S. 384, 387-89, 127 S.Ct. 1091, 166 L.Ed.2d 973 (2007) (finding that the common law tort of false imprisonment "provides the proper analogy" for determining the accrual date of a statutory section 1983 cause of action). As previously noted, the closest common law analogs to Mr. Gressman's statutory factual innocence claim are false imprisonment and malicious prosecution. Su-pro 1 9.
T25 Under the common law, both false imprisonment and the malicious prosecution of a criminal action are categorized as torts against the person (as opposed to torts against property) because these torts infringe upon an individual's personal liberty interests.[6] The Restatement (Second) of Torts groups false imprisonment with other personal torts, such as battery and the negligent infliction of bodily harm, because false imprisonment similarly implicates an invasion of the "interests of personality." ReSTATEMENT (SEconD) or Torts, Chapter 2, Introductory Note (1965); see also ProssErR AND KEEtoN on THE Law or Torts, supra, § 11 (The tort of false imprisonment "protects the personal interest in freedom from restraint of movement."); id. § 125A (categorizing false imprisonment, along with battery and negligence, as a tort "affecting the person," rather than a tort "against real property"). Utah has also long recognized false imprisonment as an "injury] to the person" along with assault and battery. Mason, 24 P. at 796 (internal quotation marks omitted). And although the malicious prose-ecution of a civil suit is considered a property tort, the malicious prosecution of a criminal action is similarly categorized as a personal injury tort. Wild v. Rarig, 302 Minn. 419, 234 N.W.2d 775, 791-92 (1975), Woodford v. McDaniels, 73 W.Va. 736, 81 S.E. 544, 546 (1914) ("An action for malicious prosecution . is an action for a personal injury.").
1 26 In accord with this long-standing division between personal torts and property torts, other states have interpreted statutory references to actions for "personal injury," "injury to the person," or similar references *1006 to personal torts to include actions for false imprisonment and malicious prosecution. Merimee v. Brumfield, 397 N.E.2d 315, 318 (Ind.Ct.App.1979) (Interpreting the term "personal injuries" in a survival statute, the Indiana Court of Appeals held that "(there is considerable authority for the proposition that the term 'personal injuries' is a broader, more comprehensive and significant term than the term 'bodily injury' It includes malicious prosecution [and] false imprisonment."); Rivera v. Double A Transp., Inc., 248 Conn. 21, 727 A.2d 204, 207-08 (1999) (A two-year statute of limitations on actions "to recover damages for injury to the person" applied to an action for false imprisonment because "the term 'injury,/ ... under both the common and legal usage of the term, includes harm to the mind as well as to the body."); Morton v. W. Union Tel. Co., 130 N.C. 299, 41 S.E. 484, 485 (1902) (Interpreting the term "injury to the person" in a survival statute, the North Carolina Supreme Court held that "[plersonal injuries may be either bodily or mental, but, whether one or the other, they infringe upon the rights of the person, and not of property."); Ex parte Holsonback, 236 Ala. 265, 182 So. 28, 29-30 (1938) (malicious prosecution claim survives under a statute providing for the survival of "all personal actions, except for injuries to the reputation"); Fricke v. Geladaris, Inc., 221 N.J.Super. 49, 533 A.2d 971, 971, 973 (N.J.Super.Ct.App.Div.1987) (malicious prosecution claim survives under a statute providing for the survival of an action for any "trespass done to the person").
127 In addition, the United States Supreme Court has held that a statutory seetion 1983 action, which provides a remedy for individuals wrongfully imprisoned or prosecuted under the color of law, is best defined as a personal injury tort claim for the purpose of selecting the appropriate statute of limitations. Wilson v. Garcia, 471 U.S. 261, 277-78, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985), superseded by statute, Judicial Improvements Act of 1990, Pub.L. No. 101-650, 104 Stat. 5114, as recognized in Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369, 377-78, 124 S.Ct. 1836, 158 L.Ed.2d 645 (2004). The Court reasoned that because a section 1983 action provides a remedy for the violation of rights "guaranteed to the person{,]iJn the broad sense, every cause of action under § 1983 which is well-founded results from personal injuries." Id. at 278, 105 S.Ct. 1938 (internal quotation marks omitted).
128 Because common law analogs to a factual innocence claim under the PCRA are commonly included in the definition of actions for "personal injury" or "injury to the person" under survival statutes, and because a similar federal statutory claim has been defined as a personal injury action for the purposes of statutes of limitations, Mr. Gressman's statutory claim survives because it is an action for "personal injury to a person." See Utax CopE § 78B-3-107(1)(a).
29 The dissent reaches a contrary conclusion, reasoning that the phrase "personal injury to a person" could be read broadly to include all actions that are personal in nature or narrowly to include only bodily injury claims. Infro 159. The dissent prefers the narrow interpretation, concluding that the addition of the phrase "to a person" to the term "personal injury" connotes "physical harm to a claimant's 'person." [7] Infra 1 61. *1007 Thus, while the dissent concedes that Mr. Gressman's claim is for "personal injury," it concludes that this claim is not for "personal injury to a person." Infre 157. We disagree for two principal reasons.
30 First, the history and context of the adoption of the current version of the survival statute demonstrates that the legislature did not intend that the statute be confined to actions for physical injury. Prior to 1991, Utah's general survival statute provided for the survival of actions "arising out of physical injury to the person." Uras Cop® § 78-11-12 (1987) (emphasis added). In 1991, the legislature changed the word "physical" to "personal" so that the statute provided for the survival of actions "arising out of personal injury to the person." 1991 Utah Laws 401 (emphasis added). The dissent argues that this change was of no consequence and that the legislature merely changed a statute that clearly provided for the survival of only physical injury claims to a less clear iteration of the same principle. Infra 166. But this reading nullifies the legislature's amendment and improperly assumes this substantive change was an idle act. See 73 Am.Jur.2d Statutes § 214 n. 3 (2012) ("An amendment to a statute making a material change bespeaks a legislative intent to change the meaning of the statute.").
1 31 In light of the well-established principle that a statutory reference to "personal injury" claims includes all personal torts (as opposed to property torts), the legislature's 1991 amendment evidences an intent to expand the types of actions that would survive. See supra T 26. Moreover, statutes of limitations for personal injury claims are widely recognized to include all personal tort claims-not just claims involving physical injury-further demonstrating the legislature's intent to expand the scope of the survival statute. See 51 Am.Jur.2d Limitation of Actions § 128 (2011) ("A claim which is personal injury in nature, for purposes of [a statute of limitations for personal injuries], need not involve a direct physical injury, and may encompass a broad range of infringements of personal rights." (footnote omitted); 54 C.J.S. Limitations of Actions § 97 (2005) [renumbered as § 116 in the electronic version] ("Statutes limiting actions for injuries done to the person include actions for injuries done to the individual, as distinguished from injuries done to his or her property," and govern "various particular actions, such as actions for infliction of mental or emotional distress" and "violation of civil rights." (footnote omitted)). And in the context of insurance contracts, the term "personal injury" also includes more than just physical injury, encompassing injuries caused by false arrest and civil rights violations. 46 C.J.S. Insurance § 1868 (2007) ("The term 'personal injury' is broader and more comprehensive than the term 'bodily injury' and is synonymous with 'injury to person.'" (footnote omitted)); Benjamin v. Amica Mut. Ins. Co., 2006 UT 37, ¶¶ 32-33, 140 P.3d 1210 {personal injury insurance policy covered liability for false imprisonment); Vargas v. Hudson Cnty. Bd. of Elections, 949 F.2d 665, 672 (3d Cir.1991) (personal injury insurance policy covered liability for civil rights violations).
132 Indeed, the legislature's definition of the term "personal injury" in a contemporary statute indicates that it intended to alter the meaning of the survival statute when it changed "physical injury" to "personal injury." At the time the legislature amended the survival statute, Utah's governmental immunity statute defined the phrase "personal injury" to mean "an injury of any kind other than property damage," demonstrating that the legislature recognized that "personal injury" referred to all personal torts as opposed to property torts. Urax Cop § 63-30-2(6) (1989).
[ 383 Second, we disagree with the dissent's conclusion that the phrase "to a person" indicates the legislature intended to limit the application of the survival statute to physical injury claims. Both a claim for false imprisonment and a claim for negligent infliction of a physical injury seek redress for harm done "to a person." Thus, this phrase does nothing to distinguish one from the other. If anything, the repetition of the root word *1008 "person" in the phrase "personal injury to a person" emphasizes the inclusion of all personal tort claims in the survival statute. Indeed, the most common statutory phrases used to reference personal tort claims are "personal injury" and "injury to the person." See supro 126. The 1991 amendment to the survival statute simply conflated these two phrases to create the term "personal injury to the person." 1991 Utah Laws 401. A subsequent 2008 amendment changing the article "the" to the article "a," such that the statute now reads "personal injury to a person," was deemed by the legislature to be merely stylistic and did not change the statute's double reference to personal torts. 2008 Utah Laws 896; Utax CopEr Ann. § 78B-8-107, Amendment Notes (2012) (stating the 2008 amendments were stylistic).
T 34 The essence of the dissent's reading of the phrase "to a person" is that "[the noun 'person' indicates a natural body." Infra, 161 (internal quotation marks omitted). Thus, the dissent interprets the survival statute to provide for the survival of claims for "personal injury to a person's body." But the law recognizes that a person is more than a physical conglomeration of tissue and bones that may be cut, bruised, or broken:
In law the word 'person' does not simply mean the physical body, for, if it did, it would apply equally to a corpse. It means a living person, composed of body and soul.... The mind is no less a part of the person than the body, and the sufferings of the former are sometimes more acute and lasting than those of the latter.
Morton, 41 S.E. at 485 (internal quotation marks omitted).[8] Additionally, the Supreme Court has emphasized that the rights secured by the U.S. Constitution are guaranteed to persons:
[The Fourteenth Amendment unequivocally recognizes the equal status of every "person" subject to the jurisdiction of any of the several States. The Constitution's command is that all "persons" shall be accorded the full privileges of citizenship; no person shall be deprived of life, liberty, or property without due process of law or be denied the equal protection of the laws. A violation of that command is an injury to the individual rights of the person.
Wilson, 471 U.S. at 277, 105 S.Ct. 1938. In sum, the inherent, unalienable rights recognized by the U.S. Constitution are also fundamental to the meaning of what it is to be a person. Taken as a whole, therefore, the definition of "person" is broader than an individual's natural body and is necessarily coextensive with the "interests of personality" vindicated by personal tort law. See REstaTEMENT (SEconp) or Torts, Chapter 2, Introductory Note (1965).
135 We therefore conclude that Mr. Gressman's claims survived his death and the district court properly substituted his widow into the lawsuit.
II. THE 1996 VACATUR OF MR. GRESS-MAN'S CONVICTION DID NOT CONCLUSIVELY ESTABLISH HIS FAC-. TUAL INNOCENCE
A. The District Court Erred in Granting Summary Judgment on the Issue of Mr. Gressman's Factual Innocence
136 The district court granted summary judgment in favor of Mr. Gressman's widow based upon its finding that the 1996 vacatur of his aggravated sexual assault conviction was effectively a determination that Mr. Gressman was factually innocent. In essence, the district court ruled that the 1996 order vacating Mr. Gressman's conviction collaterally estopped the State from contesting his claim of innocence. We hold that the district court erred because the 1996 order did not conclusively establish Mr. Gressman's factual-innocence, as defined by the PCRA.
187 "The doctrine of res judicata embraces two distinct theories: claim preclusion and issue preclusion." Buckner v. Kennard, 2004 UT 78, ¶ 12, 99 P.3d 842. "Issue preclusion, which is also known as collateral estoppel, prevents parties or their privies *1009 from relitigating facts and issues in the see-ond suit that were fully litigated in the first suit." Oman v. Davis Sch. Dist., 2008 UT 70, ¶ 28, 194 P.3d 956 (internal quotation marks omitted). Issue preclusion applies only if four elements are satisfied:
(1) the party against whom issue preclusion is asserted was a party to or in privity with a party to the prior adjudication; (i) the issue decided in the prior adjudication was identical to the one presented in the instant action; (ifi) the issue in the first action was completely, fully, and fairly litigated; and (iv) the first suit resulted in a final judgment on the merits.
Moss v. Parr Waddoups Brown Gee & Loveless, 2012 UT 42, ¶ 23, 285 P.3d 1157 (internal quotation marks omitted).
88 The second element of issue preclusion is not met here because the issue decided by the 1996 order-whether to vacate Mr. Gressman's conviction and grant a new trial based upon newly discovered evidence-is not identical to the issue presented in the instant action under the PCRA-whether Mr. Gressman is factually innocent of aggravated sexual assault. See Jensen ex rel. Jensen v. Cunningham, 2011 UT 17, ¶ 49, 250 P.3d 465 (The final adjudication of a federal constitutional claim did not collaterally estop a plaintiff from making a similar claim under the Utah constitution because the legal standards governing these claims are not identical.).
139 In order to obtain relief under the PCRA based upon a claim of factual innocence, a petitioner bears the burden of proving by clear and convincing evidence that the petitioner did not
(a) engage in the conduct for which the person was convicted;
(b) engage in conduct relating to any lesser included offenses of the crime for which the person was convicted; or
(c) commit any other felony arising out of or reasonably connected to the facts supporting the indietment or information upon which the person was convicted.
Utax Cop® § T8B-9-401.5(2); id. § 78B-9-404(1)(b).[9] In other words, a petitioner seeking a factual innocence determination may not merely attack the sufficiency of the evidence supporting his conviction or attempt to overturn an adjudication of guilt on technical grounds; the petitioner must affirmatively prove innocence of both the erime for which the petitioner was convicted and any related criminal conduct by clear and convincing evidence.
140 The district court that vacated Mr. Gressman's conviction in 1996 did not apply the PCRA's factual innocence standard, which was not established by the legislature until 2008. See 2008 Utah Laws 2298-2301. Instead, the court cited Utah Rules of Civil Procedure rules 59(a)(d) (grounds for granting a new trial based upon newly discovered evidence) and 60(b) (grounds for granting relief from a judgment or order, including for newly discovered evidence) as the basis for its order vacating Mr. Gressman's conviction and granting him a new trial. In order to grant a new trial under either rule 59(a)(4) or rule 60(b), any newly discovered evidence "must be of sufficient substance that there is reasonable likelihood that with it there would have been a different result." [10] In re S.R., 735 P.2d 53, 58 (Utah 1987) (applying rule 59(a)(4)); accord Kettner v. Snow, 13 Utah *1010 2d 382, 375 P.2d 28, 30 (1962) (applying the same standard to rule 60(b)). The district court applied this standard when it ruled that Mr. Gressman was entitled to a new trial because he had produced "newly discovered evidence which is material" and "such evidence would have [had] a material and persuasive power and influence on the jury in considering the guilt of the Defendant[ ]."
[ 41 The district court's 1996 finding that a new trial was warranted is not equivalent to a finding of factual innocence because these two findings involve very different legal standards and resolve different issues. The grant of a new trial under the civil standard applied by the district court in 1996 requires only a finding of a reasonable likelihood that the defendant could have obtained a different result at trial if the newly discovered evidence had been available, while a factual innocence claim requires a convicted individual to affirmatively prove innocence by clear and convincing evidence. In other words, the former is finding that the State might not have carried its burden to prove guilt beyond a reasonable doubt, whereas the latter is a finding that the comvicted individual actually carried the burden of proving innocence by clear and convincing evidence. Because the question of whether to grant a new trial necessarily evaluates the State's burden to prove guilt, while the question of whether an individual is factually innocent involves the convicted individual's burden to prove innocence, the issue resolved in the 1996 vacatur proceeding is not identical to the question of factual innocence at issue in the present action.[11]
142 Moreover, the relief granted by the district court in 1996-a new trial to determine Mr. Gressman's guilt or innocence on the aggravated sexual assault charge-would be inconsistent with a finding of factual innocence. Indeed, the district court judge that vacated Mr. Gressman's conviction confirmed that he did not find Mr. Gressman to be innocent by commenting during the hearing that "I suppose none of us will ever really know if they [Mr. Gressman and his codefen-dant] are absolutely innocent of this."
143 Because the issue resolved by the district court in 1996 when it vacated Mr. Gressman's conviction and ordered a new trial is not identical to the issue before the court in the current action under the PCRA, the district court erred by finding that the 1996 order conclusively established Mr. Gressman's factual innocence.
B. We Do Not Find Alternative Grounds for Affirming Summary Judgment
144 Mr. Gressman's widow raises several alternative arguments for affirming the grant of summary judgment in her favor. We find none to be meritorious.
( 45 First, Mr. Gressman's widow argues that we should not review the district court's application of collateral estoppel because the State did not preserve the issue by arguing against the preclusive effect of the 1996 vacatur order. This assertion is incorrect. At the summary judgment hearing, the State argued that the 1996 vacatur "is not a finding of factual innocence, and that is not a finding that the defendant did not commit the crime for which he was convicted." See Warne v. Warne, 2012 UT 13, ¶ 19, 275 P.3d 238 (issue raised during a summary judgment hearing was preserved). Moreover, the argument advanced by Mr. Gressman's widow misapprehends the preservation rule. Issues must be preserved, not arguments for or against a particular ruling on an issue raised below. See Utan R.App. P. 24(a)(5)(A). "An issue is preserved for appeal when it has been presented to the dis-triet court in such a way that the court has an opportunity to rule on [it]." Patterson v. Patterson, 2011 UT 68, ¶ 12, 266 P.3d 828 (alteration in original) (internal quotation *1011 marks omitted). Thus, even if the State had not argued against the application of collateral estoppel, the issue was preserved when Mr. Gressman's widow presented the issue to the district court by arguing for the preclu-sive effect of the 1996 vacatur, thereby giving the district court an opportunity to rule on the issue. A party may not raise an issue and induce the district court to rule upon it, and then argue the issue is not preserved in order to insulate the ruling from appellate review.
146 Mr. Gressman's widow also argues we should not consider the State's appeal from the district court's grant of summary judgment because the State failed to marshal the record evidence in support of the "district court's factual innocence finding." See Utan R.App. P. 24(a)(9) ("A party challenging a fact finding must first marshal all record evidence that supports the challenged finding."). But because a district court does not make findings of fact when granting a motion for summary judgment-finding only the absence of disputes regarding material facts-the marshalling requirement has no application here. See UTax R. Crv. P. 56(c) (summary judgment appropriate only if there is "no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law").
€47 Finally, Mr. Gressman's widow argues that even if the district court erred by basing its grant of summary judgment on the preclusive effect of the 1996 vacatur order, we may affirm on the alternative ground that the State produced no admissible evidence that would create a dispute of material fact regarding his factual innocence. We decline to affirm on this alternative ground because the record evidence before the district court demonstrated disputes of material fact that would preclude summary judgment.
48 Mr. Gressman's widow supported her motion for summary judgment on the factual innocence claim with (1) Mr. Gressman's verified petition for postconviction relief, in which he asserts in general terms that he is factually innocent, (2) Mr. Gressman's parole hearing transeript in which he consistently maintained his innocence despite the fact that his denials of culpability could negatively affect his chances of being paroled, and (8) a DNA test report confirming that semen recovered from vaginal swabs performed on the alleged victim did not come from Mr. Gressman. The State supported its opposition to summary judgment with (1) the ree-ord of Mr. Gressman's criminal trial, including the alleged victim's testimony that Mr. Gressman physically assaulted, fondled, and raped her; (2) the transcript of Mr. Gress-man's parole hearing in which the alleged victim contradicted Mr. Gressman's assertions of innocence and again stated that he had fondled and raped her; and (8) an affidavit prepared for the factual innocence proceedings and signed by the alleged victim that onee again affirmed her testimony that Mr. Gressman physically assaulted, fondled, and raped her and explained that the alleged victim was not sure whether Mr. Gressman had ejaculated during the alleged sexual assault and that the semen recovered from the vaginal swab must have come from prior sexual intercourse with her husband.
49 Because the district court found that the alleged victim's affidavit also contained inadmissible statements that were argumentative or were not based upon personal knowledge, the court struck the affidavit in its entirety. Mr. Gressman's widow argues that the State's opposition to her summary judgment motion is based entirely upon the affidavit and that without it, the district court must accept Mr. Gressman's sworn statement of factual innocence. But the PCRA requires the district court to consider "the record of the original criminal case and ... any postconviction proceedings in the case" in making a factual innocence determination. Utax CopE § 78B-9-404(G8). The district court, therefore, must consider the alleged victim's trial testimony and parole hearing statements, which contradict Mr. Gressman's assertions of factual innocence. Since the record reveals that Mr. Gressman's factual innocence of aggravated sexual assault or any related criminal conduct is disputed, we may not affirm the district court's grant of summary judgment on the alternative grounds suggested by Mr. Gressman's widow.
*1012 III. PREJUDGMENT INTEREST MAY NOT BE ADDED TO ANY AWARD OF FINANCIAL ASSISTANCE PAYMENTS UNDER THE PCRA
150 Because we reverse summary judgment in favor of Mr. Gressman's widow, we also reverse the award of PCRA assistance payments and prejudgment interest on those payments, mooting the State's argument that prejudgment interest may not be awarded. But since we reverse for further proceedings and it is possible that the issue of prejudgment interest may arise in this case again, we address the State's argument in order to provide guidance to the district court.
T51 The version of the PCRA that was in effect when Mr. Gressman's factual innocence claim arose provides for assistance payments to an individual determined to be factually innocent in the amount of "the monetary equivalent of the average annual non-agricultural payroll wage in Utah ... at the time of the petitioner's release from prison" for the amount of time the petitioner was incarcerated. Urax § 78B-9-405(1)(a) (2008). This version of the PCRA does not provide for an award of prejudgment interest on this amount.[12]
1 52 We have previously held that prejudgment interest may not be awarded where a "statute fixes a penalty or determines the damages to be allowed." Fell v. Union Pac. Ry. Co., 32 Utah 101, 88 P. 1003, 1006 (1907). Thus, where a statute fixes the damages to be awarded, the statutory amount is deemed to be the full compensation allowed by the legislature, and prejudgment interest may not be added unless provided for in the statute. Indeed, the relevant version of the PCRA confirms that the legislature did not contemplate compensation in addition to the amount specifically provided by the statute: "Payments pursuant to this part constitute a full and conclusive resolution of the petitioner's claims on the specific issue of factual innocence." Uta Copm § 78B-9-405(8) (2008).
T 53 Therefore, if assistance payments are ultimately awarded in this case, we hold that prejudgment interest may not be awarded.
CONCLUSION
{ 54 We find that Mr. Gressman's factual innocence claim survived his death and that the district court properly substituted his widow into the case. But the district court erred by granting summary judgment in favor of Mr. Gressman's widow and awarding prejudgment interest on the statutory financial assistance payments. We accordingly reverse for further proceedings consistent with this opinion.
Justice DURHAM authored the opinion of the Court, in which Chief Justice DURRANT, Associate Chief Justice NEHRING, and Justice PARRISH joined.
Justice LEE filed a dissent.

. The 2012 amendments, enacted after this case was filed in the district court, provide that "[al claim for determination of factual innocence under this part is not extinguished upon the death of the petitioner. The assistance payment provisions of Section 78B-9-405 may not apply, and financial payments may not be made, if the finding of factual innocence occurs after the death of the petitioner. In addition, any payments already being made under Section 78B-9-405 shall cease upon the death of the petitioner." Uran Cope § 78B-9-402(14) (2012). In 2013, after briefing and oral argument in this appeal had been completed, the legislature amended the PCRA once again. The 2013 amendment provides that a factual innocence claim survives the death of a petitioner and that financial assistance payments shall be remitted to a surviving spouse if the petitioner was married at the time the petitioner was found guilty and remained continuously married until the petitioner's death. Id. § 78B-9-402(14) (2013).

. Due S., Inc. v. Dep't of Alcoholic Beverage Control, 2008 UT 71, ¶ 14, 197 P.3d 82 (determining that an amendment affecting a standard of review was retroactive because it was a clarification and because "the standard of review is a matter of procedural, rather than substantive, law" (internal quotation marks omitted)); Kilpatrick v. Wiley, Rein & Fielding, 2001 UT 107, ¶ 59, 37 P.3d 1130 (applying an amendment retroactively because the court considered the amendments to be both a clarification and procedural because they did not affect the plaintiffs' "vested or contractual right[s]"); Evans & Sutherland Computer Corp. v. Utah State Tax Comm'n, 953 P.2d 435, 440 (Utah 1997) (applying an amendment retroactively because it was a "clarifying amendment ... to a procedural statute"); State v. Higgs, 656 P.2d 998, 1001-02 (Utah 1982) (holding that remedial amendments that affect only procedure or practice applied retroactively); McGuire v. Univ. of Utah Med. Ctr., 603 P.2d 786, 788 (Utah 1979) (relying on Foil v. Ballinger to hold that an amendment to a procedural statute had retroactive effect); Foil v. Ballinger, 601 P.2d 144, 150-51 (Utah 1979) (determining that amendments to a procedural statute are retroactive, particularly when "a remedial statute [is] passed to clarify an earlier procedural enactment"); cf. State v. Angilau, 2011 UT 3, ¶ 1 n. 2, 245 P.3d 745 (noting that an amendment applied retroactively after "both parties ... stipulated that [the] statutory issues are ... moot"); Gohler v. Wood, 919 P.2d 561, 563 n. 2 (Utah 1996) (applying a statute retroactively where the parties all conceded that the statute was a clarification with retroactive effect); Hamblin v. City of Clearfield, 795 P.2d 1133, 1136 (Utah 1990) (giving a statute "retroactive" effect where the analysis under the previous version of the statute was "the same as [the] analysis under the ... amendment).

. See Keegan, 896 P.2d at 620 ("[AJn exception exists for amendments clarifying statutes, which are applied retroactively, so long as they do not enlarge, eliminate, or destroy vested or contractual rights." (citations and internal quotation marks omitted)); Rocky Mountain Thrift Stores, Inc. v. Salt Lake City Corp., 784 P.2d 459, 461-62 (Utah 1989) (alluding to the clarifying amendment exception but stating that "[a] later statute or amendment should not be applied in a retroactive manner to deprive a party of his rights or impose greater liability upon him." (internal quotation marks omitted)).

. Mr. Gressman argues that the State is estopped from claiming that the 2012 amendments are retroactive because it assured the legislature that the amendments would not apply to Mr. Gress-man's claim but would apply only to future cases. Because we determine that the 2012 amendments are not retroactive, we decline to address this argument. However, we do consider the State's conduct in arguing to this court that the amendment is retroactive, after assuring the legislature that the amendment would not be retroactive, to be troubling.

. Compare Uta Cope § 34A-2-106(1)(a) ("[Tihe injured employee, or in case of death, the employee's dependents, may claim compensation[.]"), and Final Report of the Special Master for the September 11th Victim Compensation Fund of 2001, at 22-23, available at www justice. gov/final_report.pdf, with Utan Copr § 78B-9-405 (2008).

. - In addition to personal torts and property torts, Utah recognizes injury to reputation as a third category of tortious conduct. Urax Const. art. I, § 11 ("All courts shall be open, and every person, for an injury done to him in his person, property or reputation, shall have remedy by due course of law...."). We do not decide here whether reputational torts, such as defamation, fall within the ambit of Utah's survival statute.

. The dissent notes that Black's Law Dictionary acknowledges both a narrow and a broad definition of "personal injury," defining the term as both (1) "In a negligence action, any harm caused to the person, such as a broken bone, a cut, or a bruise" and (2) "Any invasion of a personal right, including mental suffering and false imprisonment." Brack's Law Dictionary 857 (9th ed.2009); see infra 159 n. 1, n. 2. But the narrow definition is confined to negligence actions, while Utah's survival statute includes both intentional torts and negligence, indicating that the broader definition would be more appropriate here. Moreover, the edition of Black's Law Dictionary that was current when Utah first adopted the term "personal injury" in its survival statute clarified that the broader definition of "personal injury" generally applied to statutes: "[Personal injury] is chiefly used in this connection [defined narrowly] with actions of tort for negligence .... But the term is also used (usually in statutes) in a much wider sense, and as including any injury which is an invasion of personal rights [such as] malicious prosecution [and] false imprisonment...." Bmack's Law Dictionary 786 (6th ed.1990); see also Martin v. Derenbecker, 116 La. 495, 40 So. 849, 851 (1906) ("It might, perhaps, be argued that the application of the words 'personal injuries," as used in the statute, should be confined to cases of physical injury to the person of the wife; but we take those words *1007 to be used in their commonly accepted sense, and, thus used, as meaning any injuries which are personal to the wife, and as including injuries to feelings.. ..").

. Cf. Rens Descartes, Principia pt. I, § 7 (1644) ("ego cogito, ergo sum" [I think, therefore I am]).

. Because these provisions of the PCRA have not been materially altered since Mr. Gressman's claim arose in 2008, we cite the current version of the statute in this section of the opinion.

. - This civil standard for granting a new trial is different from the standard for vacating a criminal conviction due to newly discovered evidence under the PCRA. The PCRA provides that a conviction may be vacated or modified only if "viewed with all the other evidence, the newly discovered material evidence demonstrates that no reasonable trier of fact could have found the petitioner guilty of the offense or subject to the sentence received." - Ura Cope § 78B-9-104(1)(e)(iv); see also id. § 78-35a-104(1)(e)(iv) (1996) (The same standard applied when the PCRA was first enacted in 1996.). The PCRA, however, did not control the proceedings that led to the vacatur of Mr. Gressman's conviction because the act did not go into effect until several weeks after the district court vacated the conviction. See id. § 78B-9-103. And for the purposes of collateral estoppel, we must evaluate the legal standard the court actually applied in the prior proceeding-not the legal standard that would currently apply or even the legal standard the court should have applied.

. The current version of the PCRA clarifies that the vacatur of a conviction based on newly discovered evidence is not equivalent to a finding of factual innocence and that the two claims must be litigated separately. See Uran Conr § 78B-9-104(3) (providing that a factual innocence petition may not be filed as part of a petition for postconviction relief to vacate a sentence based on newly discovered evidence); id. § 78B-9-402(5) ("A person who has already obtained postconviction relief that vacated or reversed the person's conviction or sentence may also file a petition [for determination of factual innocence] .. if no retrial or appeal regarding this offense is pending.").

. The current version of the PCRA specifically provides that district courts may not award prejudgment interest. Ura Cone § 78B-9-405(8). But as we explained above, the version of the PCRA that was in effect when Mr. Gressman's factual innocence claim arose controls this case. See supra " 20.