CHRISTIANSEN, Judge
(dissenting):
17 I respectfully dissent because I disagree with the majority's conclusion that the City failed to present evidence sufficient to convict Valdez-Sadler of obstruction of justice. In my view, the plain language of the obstruction-of-justice statute is unambiguous, and the actions taken by Valdez-Sadler clearly fall within the statute's reach,. Accordingly, I would hold that the trial court correctly denied Valdez-Sadler's motion for directed verdict in this case.
118 The obstruction-of-justice statute is broadly worded and eriminalizes "harborling] or conceal[ing] a person" or "provid{ing] false *345 information regarding a suspect" with the intent to "hinder, delay, or prevent the investigation, apprehension, prosecution, conviction, or punishment of any person regarding conduct that constitutes a criminal offense." Utah Code Ann. § 76-8-806(1) (LexisNexis 2012). I disagree with the lead opinion's conclusion that Valdez-Sadler's lies to police about Boyfriend's whereabouts fall outside the ambit of the statute. Specifically, I cannot read the plain language of the statute in such a way as to support the lead opinion's conclusion that, because Boyfriend "had already been apprehended, convicted, and sentenced" for the felony underlying his probation, "Valdez-Sadler's actions did not 'hinder, delay, or prevent the investigation, apprehension, prosecution, conviction, or punishment? of Boyfriend regarding the underlying felony." Supra 18.
19 The lead opinion appears to interpret the word "regarding" as synonymous with "for." The lead opinion's analysis hinges on the fact that "the conduct for which police sought Boyfriend was his probation violation, not his commission of the underlying felony." Supra 18. And the lead opinion's conclusion is couched in terms of official action against Boyfriend for commission of a eriminal offense: "the City failed to present evidence from which the jury could have determined that Valdez-Sadler 'hinder[ed], delay[ed], or prevent{ed] the investigation, apprehension, prosecution, conviction, or punishment' of Boyfriend 'regarding conduct that constitutes a criminal offense." " Supra 1 9.
1 20 However, when interpreting a statute, we must presume "that the legislature used each term advisedly according to its ordinary and usually accepted meaning." State ¥. Berriel, 2018 UT 19, 113, 299 P.3d 1133 (citation and internal quotation marks omitted). The ordinary and usually accepted meaning of the word "regarding" is "relating to" or "concerning." See Merriam-Webster Online, http://www.merriam-webster.com/ dictionary/regarding (last visited Aug. 6, 2015); Webster's Third New Int'l Dictionary 1911 (1998). In my view, the obstruction-of-justice statute should therefore be read to criminalize acts that intentionally impede official action "relating to" or "concerning" conduct that constitutes a criminal offense. Nothing in the statute limits this consideration to conduct for which the eriminal actor has not yet been prosecuted or punished. Thus, although Boyfriend may have been sought due to a violation of his probation, his apprehension by police (and whatever punishment is imposed upon him as a result) involves official action regarding-Le., relating to or concerning-the underlying erimi-nal conduct for which he had been sentenced and placed on probation.
[21 I also cannot agree with Judge Vo-rog's conclusion that the existence of Utah Code section 76-8-806.5 requires us to exclude Valdez-Sadler's conduct from the reach of section 76-8-806. Section 76-8-806.5 criminalizes harboring or concealing a probationer if the actor knows "that a court has issued an order to show cause regarding [that person's] violation of the terms of probation." Utah Code Ann. § 76-8-806.5(1) (LexisNexis 2012). In my view, reading seetion 76-8-306 to encompass Valdez-Sadler's conduct would neither render section 76-8-306.5 superfluous nor create a conflict between the sections.[4] The latter statute ap *346 plies when the actor knows that an order to show cause has been issued while the former applies when the actor does not. Section 76-8-306.5 thus imposes a different penalty for actively assisting a probationer to evade arrest with the knowledge that the probationer is being sought for a probation violation. Compare id. § 76-8-306(8), with id. § 76-8-306.5. Accordingly, in my view, the combined function of these statutes is to punish actors differently depending on their level of knowledge.
122 It is true that an actor could conceivably be convicted under both statutes. Utah law recognizes that "the same act of a defendant ... [may] establish offenses which may be punished in different ways under difference provisions of [the criminal code.]" See Utah Code Ann. § 76-1-402(1) (LexisNexis 2012). In such cases, the defendant may not be punished under all of the 1mpl1cated provisions, see id., but the overlap between offenses does not act as a bar to charges or even convictions for overlapping offenses. Rather, whatever convictions are ultimately found by the jury are simply subject to merger or related doctrines. See State v. Lee, 2006 UT 5, 128 P.3d 1179; State v. Shondel, 22 Utah 2d 8348, 458 P.2d 146, 147-48 (1969). Thus, T do not believe that section 76-8-~806 must be interpreted to exclude the harboring of wanted probationers merely because section 76-8306.5 could criminalize the same conduct (albeit with a heightened mens rea) in a particular case.
4 23 I conclhuide that the plain language of section 76-8-806, the justice statute, unambiguously encompasses Valdez, Sadler's lies about Boyfriend's whereabouts to the police seeking to apprehend him regarding his underlying convietion. Because I also conclude that the evidence was sufficient for a jury to infer that Valdez-Sadler acted" with the intent to hinder Boyfriend's apprehension, I would affirm the trial court's denial of Valdez-Sadler's motion for directed verdict.

. I note that, while Valdez-Sadler discussed section 76-8-306.5 in the context of explaining why the legislative history of that section should inform our consideration of section 76-8-306, Valdez-Sadler did not argue that the existence of section 76-8-306.5 precluded her conviction under section 76-8-306. I would not reverse the trial court on the basis of an argument not raised by the appellant's opening brief. -
Moreover, I do not think it necessary to guess at the legislature's intent in enacting section 76-8-306. As Judge Voros points out, "[the best evidence of the true intent and purpose of the Legislature in enacting [a statute] is the plain language of the [statute]." State v. Hunt, 906 P.2d 311, 312 (Utah 1995). When the statutory language is plain and unambiguous, we do not look beyond the language's plain meaning to divine legislative intent." Horton v. Royal Order of the Sun, 821 P.2d 1167, 1168 (Utah 1991); see also, eg., Allisen v. American Legion Post No. 134, 763 P.2d 806, 809 (Utah 1988); Graves v. North E. Servs., Inc., 2015 UT 28, 167, 345 P.3d 619 (noting that "[the governing law is defined not by our abstract sense of legislative purpose, but by the statutory text that survived the constitutional process of bicameralism and presentment"); Gressman v. State, 2013 UT 63, % 69-70, 323 P.3d 998 (Lee, J., dissenting) (cautioning that legislators do not necessarily share a unified intent when they enact a statute); D.4. v. D.H., *346 2014 UT App 138, 118 n. 3, 329 P.3d 828 (noting the "potential pitfalls in attempting to divine the intent of a legislative body from a hand-picked selection of arguably favorable comments" made by bill sponsors). Because I conclude that the language of section 76-8-306 is plain and unambiguous, I would decline Valdez-Sadler's invitation to divine the legislature's intent in enacting 76-8-306.